MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CALVIN ADONY MARIANO ESPINOZA,
CESAR GUERRERO, EDWIN FABRICIO
CASHABAMBA TUBON, JOSE GALVEZ,
JOSE HERNANDEZ, JUAN MAURICIO
GUZMAN, MELVIN JAVIER AGUILAR,
MIGUEL ANGEL GONZALEZ, MOISES
MORALES FELIPE, MONICA
ALEXANDRA RAMON ROSALES
GALVEZ, RONALD AGUILAR, JIMMY
AGUILAR, ARNOL GARCIA, CRISTIAN
MENDEZ ROSAS, MARVIN AMADOR, and
PORFIRIO PEREZ ROSARIO *individually*
*and on behalf of others similarly situated,*

                              *Plaintiffs,*

               -against-

EURO DESIGN AND STONE LLC (D/B/A
EURO DESIGN AND STONE), SALIH
OZEN A.K.A. KADIR OZEN, ALEXANDER
RAMOS A.K.A. JUNIOR MORALES, and
ROBERT LALA,

                              *Defendants.*
--------------------------------------------------------X

             **COMPLAINT**

    **COLLECTIVE ACTION UNDER**
        **29 U.S.C. § 216(b)**

              **ECF Case**

        Plaintiffs Calvin Adony Mariano Espinoza, Cesar Guerrero, Edwin Fabricio Cashabamba

Tubon, Jose Galvez, Jose Hernandez, Juan Mauricio Guzman, Melvin Javier Aguilar, Miguel

Angel Gonzalez, Moises Morales Felipe, Monica Alexandra Mejia Penafiel, Ramon Rosales

Galvez, Ronald Aguilar, Jimmy Aguilar, Arnol Garcia, Cristian Mendez Rosas, Marvin Amador,

and Porfirio Perez Rosario individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Euro Design and Stone LLC (d/b/a Euro Design and Stone), ("Defendant Corporation"), Salih Ozen a.k.a. Kadir Ozen, Alexander Ramos a.k.a. Junior Morales, and Robert Lala ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Euro Design and Stone LLC (d/b/a Euro Design and Stone), Salih Ozen a.k.a. Kadir Ozen, Alexander Ramos a.k.a. Junior Morales, and Robert Lala.

2.      Defendants own, operate, or control a construction company located at 1000 Pleasantview Terrace, Ridgefield, New Jersey 07657 under the name "Euro Design and Stone".

3.      Upon information and belief, individual Defendants Salih Ozen a.k.a. Kadir Ozen, Alexander Ramos a.k.a. Junior Morales, and Robert Lala serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporations as a joint or unified enterprise.

4.      Plaintiffs were employed as construction workers at sites in Manhattan, Rockland County and Brooklyn for the corporations located at 1000 Pleasantview Terrace, Ridgefield, New Jersey 07657.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.      Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Further, Plaintiffs were employed by Defendants to do work in this district.

## PARTIES

*Plaintiffs*

14.     Plaintiff Calvin Adony Mariano Espinoza ("Plaintiff Mariano" or "Mr. Mariano") is an adult individual residing in Bronx County, New York.

15.     Plaintiff Mariano was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately June 2019 until on or about October 4, 2019.

16.     Plaintiff Cesar Guerrero ("Plaintiff Guerrero" or "Mr. Guerrero") is an adult individual residing in Bronx County, New York.

17.     Plaintiff Guerrero was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately July 2019 until on or about September 27, 2019.

18.     Plaintiff Edwin Fabricio Cashabamba Tubon ("Plaintiff Cashabamba" or "Mr. Cashabamba") is an adult individual residing in Queens County, New York.

19.     Plaintiff Cashabamba was employed by Defendants at Euro Design and Stone's Manhattan locations from approximately October 2018 until on or about December 2018, from approximately March 1, 2019 until on or about March 30, 2019, and from approximately June 2019 until on or about September 26, 2019.

20.     Plaintiff Jose Galvez ("Plaintiff Galvez" or "Mr. Galvez") is an adult individual residing in Richmond County, New York.

21.     Plaintiff Galvez was employed by Defendants at Euro Design and Stone's Brooklyn location from approximately July 2019 until on or about September 27, 2019.

22.     Plaintiff Jose Hernandez ("Plaintiff Hernandez") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Hernandez was employed by Defendants at Euro Design and Stone's Manhattan locations from approximately June 2019 until on or about October 11, 2019.

24.     Plaintiff Juan Mauricio Guzman ("Plaintiff Mauricio" or "Mr. Mauricio") is an adult individual residing in Bronx County, New York.

25.     Plaintiff Mauricio was employed by Defendants at Euro Design and Stone's Manhattan location from approximately July 2019 until on or about September 7, 2019.

26.     Plaintiff Melvin Javier Aguilar ("Plaintiff Javier" or "Mr. Javier") is an adult individual residing in Queens County, New York.

27.     Plaintiff Javier was employed by Defendants at Euro Design and Stone's locations in Manhattan and Brooklyn from approximately September 2018 until on or about September 16, 2019.

28.     Plaintiff Miguel Angel Gonzalez ("Plaintiff Angel" or "Mr. Angel") is an adult individual residing in Richmond County, New York.

29.     Plaintiff Angel was employed by Defendants at Euro Design and Stone's Brooklyn location from approximately July 2019 until on or about August 31, 2019.

30.     Plaintiff Moises Morales Felipe ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Queens County, New York.

31.     Plaintiff Morales was employed by Defendants at Euro Design and Stone's Manhattan location from approximately July 10, 2019 until on or about September 10, 2019.

32.     Plaintiff Monica Alexandra Mejia Penafiel is an adult individual residing in Queens County, New York.

33.     Plaintiff Mejia was employed by Defendants at Euro Design and Stone's Brooklyn location from approximately July 2019 until on or about September 1, 2019.

34.     Plaintiff Ramon Rosales Galvez ("Plaintiff Rosales" or "Mr. Rosales") is an adult individual residing in Bronx County, New York.

35.     Plaintiff Rosales was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately July 2019 until on or about September 18, 2019.

36.     Plaintiff Ronald Aguilar ("Plaintiff Aguilar" or "Mr. Aguilar") is an adult individual residing in Kings County, New York.

37.     Plaintiff Aguilar was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately July 12, 2019 until on or about September 5, 2019.

38.     Plaintiff Jimmy Aguilar ("Plaintiff Jimmy" or "Mr. Jimmy") is an adult individual residing in Kings County, New York.

39.     Plaintiff Jimmy was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately March 2019 until on or about August 2019.

40.     Plaintiff Arnol Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in New York County, New York.

41.     Plaintiff Garcia was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately December 27, 2018 until on or about

August 8, 2019.

42.     Plaintiff Cristian Mendez Rosas ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Passaic County, New Jersey.

43.     Plaintiff Mendez was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately August 2019 until on or about October 2019.

44.     Plaintiff Marvin Amador ("Plaintiff Amador" or "Mr. Amador") is an adult individual residing in Kings County, New York.

45.     Plaintiff Amador was employed by Defendants at Euro Design and Stone's Manhattan and Brooklyn locations from approximately February 2019 until on or about September 2019.

46.     Plaintiff Porfirio Perez Rosario ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Westchester County, New York.

47.     Plaintiff Perez was employed by Defendants at Euro Design and Stone's Brooklyn and Rockland County location from approximately September 9, 2019 until on or about October 24, 2019.

*Defendants*

48.     At all relevant times, Defendants owned, operated, or controlled a construction company located at 1000 Pleasantview Terrace, Ridgefield, New Jersey 07657 under the name "Euro Design and Stone".

49.     Upon information and belief, Euro Design and Stone LLC (d/b/a Euro Design and Stone) is a domestic corporation organized and existing under the laws of the State of New York.

Upon information and belief, it maintains its principal place of business at 1000 Pleasantview Terrace, Ridgefield, New Jersey 07657.

50.     Defendant Salih Ozen a.k.a. Kadir Ozen is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Salih Ozen a.k.a. Kadir Ozen is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Salih Ozen a.k.a. Kadir Ozen possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

51.     Defendant Alexander Ramos a.k.a. Junior Morales is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Alexander Ramos a.k.a. Junior Morales is sued individually in his capacity as a manager of Defendant Corporations. Defendant Alexander Ramos a.k.a. Junior Morales possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

52.     Defendant Robert Lala is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Robert Lala is sued individually in his capacity as a manager of Defendant Corporations. Defendant Robert Lala possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants,

including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

53.     Defendants operate a construction company with projects located in Kings County and New York County.

54.     Individual Defendants, Salih Ozen a.k.a. Kadir Ozen, Alexander Ramos a.k.a. Junior Morales, and Robert Lala, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

55.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

56.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

57.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

58.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

59.     Upon information and belief, Individual Defendant Salih Ozen a.k.a. Kadir Ozen operate Defendant Corporations as either alter ego of himself and/or fails to operate Defendant Corporations as an entity legally separate and apart from themselves, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of their own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

60.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

61.     In each year from 2018 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

62.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporations on a daily basis are goods produced outside of the State of New York.

### Individual Plaintiffs

63.     Plaintiffs are former employees of Defendants who were employed as construction workers.

64.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Calvin Adony Mariano Espinoza

65.     Plaintiff Mariano was employed by Defendants from approximately June 2019 until on or about October 4, 2019.

66.     Defendants employed Plaintiff Mariano as a construction worker.

67.     Plaintiff Mariano regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

68.     Plaintiff Mariano's work duties required neither discretion nor independent judgment.

69.     Throughout his employment with Defendants, Plaintiff Mariano regularly worked in excess of 40 hours per week.

70.     From approximately June 2019 until on or about October 4, 2019, Plaintiff Mariano worked at the Brooklyn and Manhattan locations from approximately 7:00 a.m. until on or about

3:30 p.m., four days a week and from approximately 7:00 a.m. until on or about 4:30 p.m., one day a week (typically 43.5 hours per week).

71.     On one occasion, Plaintiff Mariano worked from approximately 7:00 a.m. until on or about 3:30 p.m., four days a week and from approximately 7:00 a.m. until on or about 7:30 p.m., one day a week (typically 46.5 hours per week).

72.     On two other occasions, Plaintiff Mariano worked from approximately 7:00 a.m. until on or about 3:30 p.m., six days a week (typically 51 hours per week).

73.     Throughout his employment, Defendants paid Plaintiff Mariano his wages in a combination of check and cash.

74.     From approximately June 2019 until on or about October 4, 2019, Defendants paid Plaintiff Mariano a fixed salary of $180 per day.

75.     For approximately two weeks, Defendants did not pay Plaintiff Mariano any wages for his work.

76.     Plaintiff Mariano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

77.     For example, Defendants required Plaintiff Mariano to work an additional one hour past his scheduled departure time one day a week, and did not pay him for the additional time he worked.

78.     Similarly, on one occasion defendants required Plaintiff Mariano to work three additional hours past his scheduled departure time, and did not pay him for the additional time he worked.

79.   Plaintiff Mariano was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

80.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mariano regarding overtime and wages under the FLSA and NYLL.

81.   Defendants did not provide Plaintiff Mariano an accurate statement of wages, as required by NYLL 195(3).

82.   Defendants did not give any notice to Plaintiff Mariano, in English and in Spanish (Plaintiff Mariano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Cesar Guerrero*

83.   Plaintiff Guerrero was employed by Defendants from approximately July 2019 until on or about September 27, 2019.

84.   Defendants employed Plaintiff Guerrero as a cement mixer.

85.   Plaintiff Guerrero regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

86.   Plaintiff Guerrero's work duties required neither discretion nor independent judgment.

87.   Throughout his employment with Defendants, Plaintiff Guerrero regularly worked in excess of 40 hours per week.

88.   From approximately July 2019 until on or about September 27, 2019, Plaintiff Guerrero worked at the Manhattan and Brooklyn locations from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Saturdays (typically 51 hours per week).

89.     Throughout his employment, Defendants paid Plaintiff Guerrero his wages in a combination of check and cash.

90.     From approximately July 2019 until on or about September 27, 2019, Defendants paid Plaintiff Guerrero a fixed salary of $900 per week.

91.     For approximately three weeks, Defendants did not pay Plaintiff Guerrero any wages for his work.

92.     Plaintiff Guerrero was only required to sign in at the start of the shifts but not to sign out at the end of the shifts every day.

93.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guerrero regarding overtime and wages under the FLSA and NYLL.

94.     Defendants did not provide Plaintiff Guerrero an accurate statement of wages, as required by NYLL 195(3).

95.     Defendants did not give any notice to Plaintiff Guerrero, in English and in Spanish (Plaintiff Guerrero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

96.     Defendants required Plaintiff Guerrero to purchase "tools of the trade" with his own funds—including one pair of gloves and one face mask.

*Plaintiff Edwin Fabricio Cashabamba Tubon*

97.     Plaintiff Cashabamba was employed by Defendants from approximately October 2018 until on or about December 2018, from approximately March 1, 2019 until on or about March 30, 2019, and from approximately June 2019 until on or about September 26, 2019.

98.     Defendants employed Plaintiff Cashabamba as a construction worker.

99.     Plaintiff Cashabamba regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

100.    Plaintiff Cashabamba's work duties required neither discretion nor independent judgment.

101.    Throughout his employment with Defendants, Plaintiff Cashabamba regularly worked in excess of 40 hours per week.

102.    From approximately October 2018 until on or about December 2018, Plaintiff Cashabamba worked at the Manhattan location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 8:00 a.m. until on or about 2:30 p.m., one Saturday a month (typically 42.5 to 49 hours per week).

103.    From approximately March 1, 2019 until on or about March 31, 2019, Plaintiff Cashabamba worked at the Manhattan location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 40 hours a week).

104.    From approximately June 2019 until on or about September 26, 2019, Plaintiff Cashabamba worked at the Manhattan and Brooklyn locations from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 8:00 a.m. until on or about 2:30 p.m., two Saturdays, and from approximately 9:00 a.m. until on or about 2:30 p.m., one Saturday (typically 40 to 47.5 hours per week).

105.    Throughout his employment, Defendants paid Plaintiff Cashabamba his wages in either check or cash.

106.    From approximately October 2018 until on or about July 2019, Defendants paid Plaintiff Cashabamba a fixed salary of $250 per day.

107.    From approximately August 2019 until on or about September 2019, Defendants paid Plaintiff Cashabamba a fixed salary of $260 per day.

108.    For approximately three weeks, Defendants did not pay Plaintiff Cashabamba any wages for his work.

109.    Plaintiff Cashabamba was only required to sign in at the beginning of the shifts but not to sign out at the end of the shifts.

110.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cashabamba regarding overtime and wages under the FLSA and NYLL.

111.    Defendants did not provide Plaintiff Cashabamba an accurate statement of wages, as required by NYLL 195(3).

112.    Defendants did not give any notice to Plaintiff Cashabamba, in English and in Spanish (Plaintiff Cashabamba's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

113.    Defendants required Plaintiff Cashabamba to purchase "tools of the trade" with his own funds—including one meter tape and one harness.

*Plaintiff Jose Galvez*

114.    Plaintiff Galvez was employed by Defendants from approximately July 2019 until on or about September 27, 2019.

115.    Defendants employed Plaintiff Galvez as a construction worker.

116.    Plaintiff Galvez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

117.    Plaintiff Galvez's work duties required neither discretion nor independent judgment.

118.     Throughout his employment with Defendants, Plaintiff Galvez regularly worked in excess of 40 hours per week.

119.     From approximately July 2019 until on or about September 27, 2019, Plaintiff Galvez worked at the Brooklyn location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 7:30 a.m. until on or about 2:00 p.m., two Saturdays a month (typically 42.5 to 49 hours per week).

120.     Throughout his employment, Defendants paid Plaintiff Galvez his wages in a combination of check and cash.

121.     From approximately July 2019 until on or about September 27, 2019, Defendants paid Plaintiff Galvez a fixed salary of $180 per day.

122.     For approximately the whole month of September 2019, Defendants did not pay Plaintiff Galvez any wages for his work.

123.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galvez regarding overtime and wages under the FLSA and NYLL.

124.     Defendants did not provide Plaintiff Galvez an accurate statement of wages, as required by NYLL 195(3).

125.     Defendants did not give any notice to Plaintiff Galvez, in English and in Spanish (Plaintiff Galvez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

126.     Defendants required Plaintiff Galvez to purchase "tools of the trade" with his own funds—including one pack of gloves per week, one pair of boots, one hammer, one box of pencils per week, and one helmet.

*Plaintiff Jose Hernandez*

- 17 -

127.    Plaintiff Hernandez was employed by Defendants from approximately June 2019 until on or about October 11, 2019.

128.    Defendants employed Plaintiff Hernandez as a construction worker.

129.    Plaintiff Hernandez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

130.    Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

131.    Throughout his employment with Defendants, Plaintiff Hernandez regularly worked in excess of 40 hours per week.

132.    From approximately June 2019 until on or about October 11, 2019, Plaintiff Hernandez worked at the Manhattan locations from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

133.    On one occasion, Plaintiff Hernandez worked from approximately 7:00 a.m. until on or about 3:30 p.m. Monday through Friday and from approximately 8:00 a.m. until on or about 3:30 p.m. on Saturday (typically 50 hours per week).

134.    Throughout his employment, Defendants paid Plaintiff Hernandez his wages either in check or cash.

135.    From approximately June 2019 until on or about October 11, 2019, Defendants paid Plaintiff Hernandez a fixed salary of $300 per day.

136.    For approximately the whole month of September 2019, Defendants did not pay Plaintiff Hernandez any wages for his work.

137.    Plaintiff Hernandez was only required to sign in at the start of the shifts but not to sign out at the end of the shifts.

138.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

139.     Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

140.     Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

141.     Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including one pair of boots and one pair of gloves.

*Plaintiff Juan Mauricio Guzman*

142.     Plaintiff Mauricio was employed by Defendants from approximately July 2019 until on or about September 7, 2019.

143.     Defendants employed Plaintiff Mauricio as a mason worker.

144.     Plaintiff Mauricio regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

145.     Plaintiff Mauricio's work duties required neither discretion nor independent judgment.

146.     Throughout his employment with Defendants, Plaintiff Mauricio regularly worked in excess of 40 hours per week.

147.     From approximately July 2019 until on or about September 7, 2019, Plaintiff Mauricio worked at the Manhattan location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

148.    From approximately July 2019 until on or about August 14, 2019, Defendants paid Plaintiff Mauricio his wages by personal check.

149.    From approximately August 15, 2019 until on or about September 2019, Defendants paid Plaintiff Mauricio his wages in cash.

150.    From approximately July 2019 until on or about September 7, 2019, Defendants paid Plaintiff Mauricio $32.00 per hour.

151.    For approximately ten days, Defendants did not pay Plaintiff Mauricio any wages for his work.

152.    Plaintiff Mauricio was only required to sign in at the start of the shifts but not to sign out at the end of the shifts.

153.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mauricio regarding overtime and wages under the FLSA and NYLL.

154.    Defendants did not provide Plaintiff Mauricio an accurate statement of wages, as required by NYLL 195(3).

155.    Defendants did not give any notice to Plaintiff Mauricio, in English and in Spanish (Plaintiff Mauricio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

156.    Defendants required Plaintiff Mauricio to purchase "tools of the trade" with his own funds—including one helmet, one pack of gloves per week, one harness, one yoyo, one pair of boots, one neon vest, and shirts.

*Plaintiff Melvin Javier Aguilar*

157.    Plaintiff Javier was employed by Defendants from approximately September 2018 until on or about September 16, 2019.

158.     Defendants employed Plaintiff Javier as a construction worker.

159.     Plaintiff Javier regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

160.     Plaintiff Javier's work duties required neither discretion nor independent judgment.

161.     Throughout his employment with Defendants, Plaintiff Javier regularly worked in excess of 40 hours per week.

162.     From approximately September 2018 until on or about September 16, 2019, Plaintiff Javier worked at the Manhattan and Brooklyn locations from approximately 6:30 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 45 hours per week).

163.     Throughout his employment, Defendants paid Plaintiff Javier his wages by personal check.

164.     From approximately September 2018 until on or about March 2019, Defendants paid Plaintiff Javier a fixed salary of $170 per day.

165.     From approximately March 2019 until on or about May 2019, Defendants paid Plaintiff Javier a fixed salary of $180 per day.

166.     From approximately June 2019 until on or about September 2019, Defendants paid Plaintiff Javier a fixed salary of $200 per day.

167.     For approximately three weeks, Defendants did not pay Plaintiff Javier any wages for his work.

168.     Plaintiff Javier's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

169.     For example, Defendants required Plaintiff Javier to start working 30 minutes prior to his scheduled start time five days a week, and did not pay him for the additional time he worked.

170.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Javier regarding overtime and wages under the FLSA and NYLL.

171.     Defendants did not provide Plaintiff Javier an accurate statement of wages, as required by NYLL 195(3).

172.     Defendants did not give any notice to Plaintiff Javier, in English and in Spanish (Plaintiff Javier's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

173.     Defendants required Plaintiff Javier to purchase "tools of the trade" with his own funds—including one drill, one harness, one yoyo, and one mask.

*Plaintiff Miguel Angel Gonzalez*

174.     Plaintiff Angel was employed by Defendants from approximately July 2019 until on or about August 31, 2019.

175.     Defendants employed Plaintiff Angel as a construction worker.

176.     Plaintiff Angel regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

177.     Plaintiff Angel's work duties required neither discretion nor independent judgment.

178.     Throughout his employment with Defendants, Plaintiff Angel regularly worked in excess of 40 hours per week.

179.     From approximately July 2019 until on or about August 31, 2019, Plaintiff Angel worked at the Brooklyn location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 7:30 a.m. until on or about 2:00 p.m., two Saturdays a month (typically 42.5 to 49 hours per week).

180.    Throughout his employment, Defendants paid Plaintiff Angel his wages by personal check.

181.    From approximately July 2019 until on or about August 31, 2019, Defendants paid Plaintiff Angel a fixed salary of $250 per day.

182.    For approximately thirteen days, Defendants did not pay Plaintiff Angel any wages for his work.

183.    Plaintiff Angel was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

184.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Angel regarding overtime and wages under the FLSA and NYLL.

185.    Defendants did not provide Plaintiff Angel an accurate statement of wages, as required by NYLL 195(3).

186.    Defendants did not give any notice to Plaintiff Angel, in English and in Spanish (Plaintiff Angel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

187.    Defendants required Plaintiff Angel to purchase "tools of the trade" with his own funds—including two levels, one harness, one tool bag, and pack of gloves per week.

*Plaintiff Moises Morales Felipe*

188.    Plaintiff Morales was employed by Defendants from approximately July 10, 2019 until on or about September 10, 2019.

189.    Defendants employed Plaintiff Morales as a construction worker.

190.    Plaintiff Morales regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

191.    Plaintiff Morales's work duties required neither discretion nor independent judgment.

192.    Throughout his employment with Defendants, Plaintiff Morales regularly worked in excess of 40 hours per week.

193.    From approximately July 10, 2019 until on or about September 10, 2019, Plaintiff Morales worked at the Manhattan location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

194.    From approximately July 10, 2019 until on or about July 31, 2019, Defendants paid Plaintiff Morales his wages by personal check.

195.    From approximately August 2019 until on or about September 10, 2019, Defendants paid Plaintiff Morales his wages in cash.

196.    From approximately July 10, 2019 until on or about September 10, 2019, Defendants paid Plaintiff Morales a fixed salary of $900 per week.

197.    For approximately two weeks, Defendants did not pay Plaintiff Morales any wages for his work.

198.    Plaintiff Morales was only required to sign in at the start of the shifts but not to sign out at the end of the shifts

199.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

200.    Defendants did not provide Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

201.   Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

202.   Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including one harness and one helmet.

*Plaintiff Monica Alexandra Mejia Penafiel*

203.   Plaintiff Mejia was employed by Defendants from approximately July 2019 until on or about September 7, 2019.

204.   Defendants employed Plaintiff Mejia as a tool keyholder.

205.   Plaintiff Mejia regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

206.   Plaintiff Mejia's work duties required neither discretion nor independent judgment.

207.   Throughout her employment with Defendants, Plaintiff Mejia regularly worked in excess of 40 hours per week.

208.   From approximately July 2019 until on or about August 24, 2019, Plaintiff Mejia worked at the Brooklyn location from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

209.   From approximately August 25, 2019 until on or about September 7, 2019, Plaintiff Mejia worked from approximately 7:00 a.m. until on or about 3:30 p.m. Mondays through Fridays and from approximately 8:00 a.m. until on or about 3:00 p.m. on Saturdays (typically 49.5 hours per week).

210.   From approximately July 2019 until on or about September 2019, Defendants paid Plaintiff Mejia her wages by personal check.

211.    From approximately July 2019 until on or about August 2019, Defendants paid Plaintiff Mejia $18.00 per hour.

212.    From approximately August 2019 until on or about September 7, 2019, Defendants paid Plaintiff Mejia $20.00 per hour.

213.    For approximately two weeks, Defendants did not pay Plaintiff Mejia any wages for her work.

214.    Plaintiff Mejia was only required to sign in at the start of the shifts but not to sign out at the end of the shifts.

215.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

216.    Defendants did not provide Plaintiff Mejia an accurate statement of wages, as required by NYLL 195(3).

217.    Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

218.    Defendants required Plaintiff Mejia to purchase "tools of the trade" with her own funds—including uniforms, three masks, ten boxes of gloves, one box of safety glasses, and one pair of boots.

*Plaintiff Ramon Rosales Galvez*

219.    Plaintiff Rosales was employed by Defendants from approximately July 2019 until on or about September 18, 2019.

220.    Defendants employed Plaintiff Rosales as a bricklayer.

221.    Plaintiff Rosales regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

222.    Plaintiff Rosales's work duties required neither discretion nor independent judgment.

223.    Throughout his employment with Defendants, Plaintiff Rosales regularly worked in excess of 40 hours per week.

224.    From approximately July 2019 until on or about September 18, 2019, Plaintiff Rosales worked at the Manhattan and Brooklyn locations from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

225.    From approximately July 15, 2019 until on or about July 31, 2019, Defendants paid Plaintiff Rosales his wages by personal check.

226.    From approximately August 2019 until on or about September 18, 2019, Defendants paid Plaintiff Rosales his wages in cash.

227.    From approximately July 2019 until on or about September 18, 2019, Defendants paid Plaintiff Rosales $32.00 per hour.

228.    For approximately one week and a half, Defendants did not pay Plaintiff Rosales any wages for his work.

229.    Plaintiff Rosales was only required to sign in at the start of the shifts but not to sign out at the end of the shifts.

230.    Defendants granted Plaintiff Rosales a constantly interrupted meal break of approximately 30 minutes once or twice a week.

231.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rosales regarding overtime and wages under the FLSA and NYLL.

232.    Defendants did not provide Plaintiff Rosales an accurate statement of wages, as required by NYLL 195(3).

233.    Defendants did not give any notice to Plaintiff Rosales, in English and in Spanish (Plaintiff Rosales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

234.    Defendants required Plaintiff Rosales to purchase "tools of the trade" with his own funds—including one harness, one level, string, one pair of boots, and one pair of gloves.

*Plaintiff Ronald Aguilar*

235.    Plaintiff Aguilar was employed by Defendants from approximately July 12, 2019 until on or about September 5, 2019.

236.    Defendants employed Plaintiff Aguilar as a construction worker.

237.    Plaintiff Aguilar regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

238.    Plaintiff Aguilar's work duties required neither discretion nor independent judgment.

239.    Throughout his employment with Defendants, Plaintiff Aguilar regularly worked in excess of 40 hours per week.

240.    From approximately July 12, 2019 until on or about September 5, 2019, Plaintiff Aguilar worked at the Manhattan and Brooklyn locations from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

241.    On one occasion, Plaintiff Aguilar worked from approximately 7:00 a.m. until on or about 3:30 p.m. Monday through Friday and from approximately 8:00 a.m. until on or about 3:00 p.m. on Saturday (typically 49.5 hours per week).

242.    Throughout his employment, Defendants paid Plaintiff Aguilar his wages by personal check.

243.    From approximately July 12, 2019 until on or about September 5, 2019, Defendants paid Plaintiff Aguilar a fixed salary of $180 per day.

244.    For approximately two weeks, Defendants did not pay Plaintiff Aguilar any wages for his work.

245.    Plaintiff Aguilar was only required to sign in at the start of the shifts but not to sign out at the end of the shifts.

246.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Aguilar regarding overtime and wages under the FLSA and NYLL.

247.    Defendants did not provide Plaintiff Aguilar an accurate statement of wages, as required by NYLL 195(3).

248.    Defendants did not give any notice to Plaintiff Aguilar, in English and in Spanish (Plaintiff Aguilar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

249.    Defendants required Plaintiff Aguilar to purchase "tools of the trade" with his own funds—including one helmet, one pair of gloves, one hammer, measuring tools, one construction pen, and one pair of boots.

*Plaintiff Jimmy Aguilar*

250.    Plaintiff Jimmy was employed by Defendants from approximately March 2019 until on or about August 2019.

251.    Defendants employed Plaintiff Jimmy as a construction worker.

252.     Plaintiff Jimmy regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

253.     Plaintiff Jimmy's work duties required neither discretion nor independent judgment.

254.     Throughout his employment with Defendants, Plaintiff Jimmy regularly worked in excess of 40 hours per week.

255.     From approximately March 2019 until on or about August 2019, Plaintiff Jimmy worked at the Manhattan and Brooklyn locations from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

256.     Throughout his employment, Defendants paid Plaintiff Jimmy his wages by either personal check or cash.

257.     From approximately March 2019 until on or about August 2019, Defendants paid Plaintiff Jimmy a fixed salary of $180 per day.

258.     For approximately two weeks, Defendants did not pay Plaintiff Jimmy any wages for his work.

259.     Plaintiff Jimmy was only required to sign in at the start of the shifts but not to sign out at the end of the shifts.

260.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jimmy regarding overtime and wages under the FLSA and NYLL.

261.     Defendants did not provide Plaintiff Jimmy an accurate statement of wages, as required by NYLL 195(3).

262.     Defendants did not give any notice to Plaintiff Jimmy, in English and in Spanish (Plaintiff Jimmy's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

263.     Defendants required Plaintiff Jimmy to purchase "tools of the trade" with his own funds—including one tape measure, one hammer, one knife, one helmet, and one pair of gloves.

*Plaintiff Arnol Garcia*

264.     Plaintiff Garcia was employed by Defendants from approximately December 27, 2018 until on or about August 8, 2019.

265.     Defendants employed Plaintiff Garcia as a construction laborer.

266.     Plaintiff Garcia regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

267.     Plaintiff Garcia's work duties required neither discretion nor independent judgment.

268.     Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

269.     From approximately December 27, 2018 until on or about August 8, 2019, Plaintiff Garcia worked at the Manhattan location from approximately 7:00 a.m. until on or about 4:00 p.m. to 6:00 p.m., five days a week (typically 45 to 55 hours per week).

270.     From approximately December 27, 2018 until on or about August 8, 2019, Defendants paid Plaintiff Garcia his wages by personal check.

271.     From approximately December 27, 2018 until on or about August 8, 2019, Defendants paid Plaintiff Garcia $27.00 per hour.

272.     For approximately a month and a half, Defendants did not pay Plaintiff Garcia any wages for his work.

273.     Plaintiff Garcia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

274.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

275.     Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

276.     Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

277.     Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including BPA equipment.

*Plaintiff Cristian Mendez Rosas*

278.     Plaintiff Mendez was employed by Defendants from approximately August 2019 until on or about October 2019.

279.     Defendants employed Plaintiff Mendez as a construction laborer.

280.     Plaintiff Mendez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

281.     Plaintiff Mendez's work duties required neither discretion nor independent judgment.

282.    Throughout his employment with Defendants, Plaintiff Mendez regularly worked in excess of 40 hours per week.

283.    From approximately August 2019 until on or about October 2019, Plaintiff Mendez worked from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 5:00 p.m., one Saturday a month, and from approximately 7:00 a.m. until on or about 3:30 p.m., two Saturdays a month (typically 42.5 to 52.5 hours per week).

284.    From approximately August 2019 until on or about September 2019, Defendants paid Plaintiff Mendez his wages by personal check.

285.    From approximately October 1, 2019 until on or about October 30, 2019, Defendants paid Plaintiff Mendez his wages in cash.

286.    From approximately August 2019 until on or about October 2019, Defendants paid Plaintiff Mendez $25.00 per hour.

287.    For approximately a month, Defendants did not pay Plaintiff Mendez any wages for his work.

288.    Defendants did not provide Plaintiff Mendez an accurate statement of wages, as required by NYLL 195(3).

289.    Defendants did not give any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

290.    Defendants required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including a hammer, meter stick, boots and a helmet.

*Plaintiff Marvin Amador*

291.    Plaintiff Amador was employed by Defendants from approximately February 2019 until on or about September 2019.

292.    Defendants employed Plaintiff Amador as a bricklayer.

293.    Plaintiff Amador regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

294.    Plaintiff Amador's work duties required neither discretion nor independent judgment.

295.    Throughout his employment with Defendants, Plaintiff Amador regularly worked in excess of 40 hours per week.

296.    From approximately February 2019 until on or about September 2019, Plaintiff Amador worked at the Manhattan and Brooklyn locations from approximately 7:00 a.m. until on or about 3:30 p.m., five days a week and from approximately 7:00 a.m. until on or about 5:00 p.m., three days in one month, and from approximately 7:00 a.m. until on or about 8:00 p.m., one day in one month (typically 42.5 to 52.5 hours per week).

297.    From approximately February 2019 until on or about September 2019, Defendants paid Plaintiff Amador his wages by personal check.

298.    From approximately February 2019 until on or about September 2019, Defendants paid Plaintiff Amador a fixed salary of $250.00 per day.

299.    For approximately two weeks, Defendants did not pay Plaintiff Amador any wages for his work.

300.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Amador regarding overtime and wages under the FLSA and NYLL.

301.    Defendants did not provide Plaintiff Amador an accurate statement of wages, as required by NYLL 195(3).

302.    Defendants did not give any notice to Plaintiff Amador, in English and in Spanish (Plaintiff Amador's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Porfirio Perez Rosario*

303.    Plaintiff Perez was employed by Defendants from approximately September 9, 2019 until on or about October 24, 2019.

304.    Defendants employed Plaintiff Perez as mason worker.

305.    Plaintiff Perez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

306.    Plaintiff Perez's work duties required neither discretion nor independent judgment.

307.    Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

308.    From approximately September 9, 2019 until on or about October 24, 2019, Plaintiff Perez worked at the Brooklyn and Rockland County locations from approximately 7:00 a.m. until on or about 3:30 p.m. to 5:00 p.m., Mondays through Saturdays (typically 51 to 60 hours per week).

309.    From approximately September 9, 2019 until on or about October 24, 2019, Defendants paid Plaintiff Perez his wages in cash.

310.    From approximately September 9, 2019 until on or about October 24, 2019, Defendants paid Plaintiff Perez a fixed salary of $260 per day.

311.     For approximately three and a half weeks, Defendants did not pay Plaintiff Perez any wages for his work.

312.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

313.     Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

314.     Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

315.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

316.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

317.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

318.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

319.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

320.    Defendants paid Plaintiffs their wages in personal check or cash.

321.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

322.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

323.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

324.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

325.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

326.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

327.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

328.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

329.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

330.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

331.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

332.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

333.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

334.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

335.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

336.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

337.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

338.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

339.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

340.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

341.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

342.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

343.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

344.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

345.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

346.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

347.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

348.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

349.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

350.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

351.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

352.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

**OF THE NEW YORK LABOR LAW**

353.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

354.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

355.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

356.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

357.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

358.     Plaintiffs were damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**

OF THE NEW YORK LABOR LAW

359.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

360.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

361.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)       Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)       Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)       Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)       Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)       Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)       Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)       Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)       Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)       Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

June 8, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:         /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 4, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Arnol Garcia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          4 de deciembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 8, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Calvin Adony Mariano Espinoza

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      *Calvin Mariano*

Date / Fecha:                           8 de Octubre del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 4, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Cesar Guerrero

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          4 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 16, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Edwin Fabricio Cashabamba Tubon

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      16 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 28, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Jimmy Aguilar

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                 Jimmy Aguilar

Date / Fecha:                      28 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 4, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Jose Galvez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                   4 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 16, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Jose Hernandez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       16 de Octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 2, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Juan Mauricio Guzman

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:          *Juan Mauric̄o P.*

Date / Fecha:               2 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 4, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Marvin  Amador

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 Marvin Amador

Date / Fecha:                      4 de Diciembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

October 2, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Melvin Javier Aguilar

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                _Aguilar_

Date / Fecha:                     2 de octubre 2019

---

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 4, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Miguel Angel Gonzalez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      4 de octubre 2019

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 8, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Moises Morales

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          8 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 18, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                           Monica Alexandra Mejia  Penafiel

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                            18 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 2, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Ramon Rosales Galvez

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:                    _Ramon Rosales_

Date / Fecha:                         2 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                    Telephone: (212) 317-1200
New York, New York 10165                                       Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

                                                               October 2, 2019

BY HAND


TO:    Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**


Name / Nombre:                  Ronald Aguilar

Legal Representative / Abogado:  Michael Faillace & Associates, P.C.

Signature / Firma:              *Ronald A Aguilar*

Date / Fecha:                   2 de Octubre 2019


*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 5, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Walter  Aguilar

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:                     ✗ Walter Aguilar

Date / Fecha:                          5 de febrero 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E. 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

BY HAND

December 2, 2019

TO:     Clerk of Court:

I hereby consent to join this lawsuit as a party plaintiff.
(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)

Name / Nombre:                          Paulino E. Perez Rosario

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      _Paulino E. Perez_

Date / Fecha:                           2 de December, 2019

Certified as a minority owned business in the State of New York